UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JUSTIN WILLIS,<br>*Plaintiff*, | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action No. SA-23-CV-00044-XR |
| VERICEL CORPORATION,<br>*Defendant*. | §<br>§<br>§ | |

## ORDER

On this date, the Court considered Defendant's motion to dismiss or, alternatively, to transfer venue to the United States District Court for the District of Massachusetts (ECF No. 4), Plaintiff's response in opposition (ECF No. 7), and Defendant's reply (ECF No. 8). After careful consideration of the parties' briefing and their arguments at the hearing held on April 6, 2023, the Court issues the following order.

## BACKGROUND

Plaintiff Justin Willis filed this action against his former employer, Vericel Corporation ("Vericel"), for copying his subsequent employer, Bioventus LLC ("Bioventus"), on a cease-and-desist letter that accused him of taking and deleting Vericel's confidential information, resulting in his immediate termination from Bioventus.

Vericel, a Michigan corporation with its principal place of business in Massachusetts, ECF No. 1 ¶ 8, is a biotechnology company engaged in the business of manufacturing cell therapies for the sports medicine and severe burn care markets, ECF No. 1-4 at 3 ¶ 6. Plaintiff worked for Vericel for approximately four years, from January 2018 until his voluntary resignation in 2022. In connection with his employment with Vericel, Plaintiff signed a confidentiality, noncompete, and non-solicitation agreement on January 9, 2018 (the "Agreement"). *Id.*; *see also* ECF No. 1-4 at 10–15. The Agreement contained the following forum-selection clause:

> **Interpretation; Consent to Jurisdiction**. This Agreement will be deemed to be made and entered into in the Commonwealth of Massachusetts, and will in all respects be interpreted, enforced and governed under the laws of the Commonwealth of Massachusetts. I hereby consent to personal jurisdiction of the state and federal courts situated within Massachusetts for purposes of enforcing this Agreement and waive any objection that I might have to personal jurisdiction or venue in those courts.

ECF No. 1-4 at 12.

On August 22, 2022, Plaintiff signed an employment agreement with Bioventus under which Plaintiff was hired as an Executive Account Manager, effective September 6, 2022. *Id.* at 5 ¶ 10. Bioventus is an orthobiologics company, which provides joint pain injection therapies and ultrasound healing therapies to treat wounds and nervous system disorders, as well as surgical solutions. *Id.* ¶ 12. Plaintiff's role at Bioventus was to lead a team of clinical design surgeons in developing a cell-free plug for the treatment of osteoarthritis. *Id.* ¶ 11. He was hired while he was living in Texas, but planned to move to Tennessee. *Id.* ¶ 13. Plaintiff alleges that his manager at Vericel, James Cusick, expressed gratitude for Plaintiff's hard work and stated that there should not be any issues with the noncompete because Plaintiff was moving into a leadership role in a new state and would not be working with Vericel's current or past customers. *Id.* ¶ 11.

On September 12, 2022, Plaintiff's last day of employment with Vericel, Defendant's Boston, Massachusetts-based lawyer at Goodwin Procter, LLP ("Goodwin"), sent Plaintiff a cease-and-desist letter at his address in Granite Shoals, Texas, accusing him of misappropriating and deleting confidential information belonging to Vericel, and stating that, by being employed by Bioventus, he was in violation of the Agreement he had signed with Vericel. *Id.* ¶ 14. Goodwin copied Bioventus's Senior Vice President and General Counsel and its Senior Vice President and Chief Human Resources Officer, both in North Carolina, on the letter. *Id.* Bioventus immediately terminated Plaintiff's employment. *Id.*

Plaintiff filed his original petition in state court on November 2, 2022, seeking damages for tortious interference with an existing contract and also declaratory judgment establishing that the noncompete provision of the Agreement imposes a greater restraint than is reasonably necessary, and that the forum selection clause is unenforceable. ECF No. 1-4. On January 11, 2023, Vericel removed the action to this Court based on diversity jurisdiction. ECF No. 1.

Vericel now moves to dismiss the Petition in this case under FED. R. CIV. P. 12(b)(2), 12(b)(3) and 12(b)(6) for want of personal jurisdiction, improper venue, and failure to state a claim. ECF No. 4. Alternatively, Vericel moves to transfer the case to the United States District Court for the District of Massachusetts. *Id.* Plaintiff opposes both dismissal and transfer of the case. ECF No. 7.[1] The Court heard oral arguments on April 6, 2023, and took the motion under advisement.

## DISCUSSION

I. **Motion to Dismiss for Lack of Personal Jurisdiction**

   A. **Legal Standard**

Due process requires that a defendant have "minimum contacts" with the forum state and that exercising jurisdiction is consistent with "traditional notions of fair play and substantial justice." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). "Minimum contacts" can give rise to either specific jurisdiction or general jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). Specific jurisdiction may exist "over a nonresident defendant whose contacts with the forum state are singular or sporadic only if the cause of action asserted arises out of or is related to those contacts." *Id.* In other words, such jurisdiction exists

---

[1] Plaintiff filed his first Amended Complaint on April 10, 2023. *See* ECF No. 16. While ordinarily the filing of an amended complaint would have mooted the pending motion to dismiss, the Court observes that the amendments appear to reflect the removal of this action to federal court and to bolster Plaintiff's allegations in support of the Court's personal jurisdiction over Vericel and the convenience of litigating in this District. The allegations in the Amended Complaint do not affect the Court's analyses of either personal jurisdiction or the propriety of this forum.

3

"when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id*. "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.*

The Fifth Circuit has established a three-step analysis for determining whether specific jurisdiction exists: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (quoting *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)). Even where a defendant has no physical presence in the forum state, a single purposeful contact may be sufficient to confer personal jurisdiction if the cause of action arises from the contact. *Nuovo Pignone*, 310 F.3d at 379.

Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). In determining whether a defendant has minimum contacts with a state, courts consider whether the defendant's conduct and connection with the forum state is such that the defendant "should reasonably anticipate being haled into court there." *Burger King v. Rudzewicz,* 471 U.S. 462, 475 (1985)). For a court to exercise jurisdiction over a defendant, the relationship between the defendant and forum state "must arise out of contacts that the 'defendant himself' creates with the forum State" and "not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 284. In other words, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the

4

State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (quoting *Burger King,* 471 U.S. at 475). Thus, "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.*

    **B.**    **Discussion**

The parties do not dispute that, as a Michigan corporation based in Massachusetts, Vericel is not subject to general jurisdiction in the State of Texas. *See* ECF No. 4 at 12–13; ECF No. 7 at 6–7. Rather, their disagreement centers on whether this suit arises out of Vericel's forum-related contacts. *See id.*

In determining whether a defendant has minimum contacts with a state, courts consider whether the defendant's conduct and connection with the forum state is such that the defendant "should reasonably anticipate being haled into court there." *Burger King,* 471 U.S. at 475. For a court to exercise jurisdiction over a defendant, the relationship between the defendant and forum state "must arise out of contacts that the 'defendant himself' creates with the forum State" and "not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 284. In other words, the relationship should "not [be] based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (quoting *Burger King,* 471 U.S. at 475).

Vericel submits that the allegedly tortious conduct—having its Massachusetts-based counsel send a copy of the cease-and-desist letter to Bioventus's offices in South Carolina regarding Plaintiff's prospective employment in Tennessee—did not involve any contacts with Texas. ECF No. 4 at 8. Accordingly, the Court applies the "effects test" set out in *Calder v. Jones*, 465 U.S. 783 (1984), to determine whether Vericel's allegedly tortious conduct was specifically

5

aimed at Texas sufficient to support personal jurisdiction. *See, e.g.*, *Revell v. Lidov*, 317 F.3d 467, 471–76 (5th Cir. 2002) (applying *Calder*).

In *Calder*, a California plaintiff sued a Florida reporter and a tabloid magazine editor in California, seeking relief for an allegedly defamatory story that the defendants fabricated and published. 465 U.S. at 784–85. The Supreme Court held that the California court had personal jurisdiction over the nonresident defendants because "California [was] the focal point of both the story and of the harm suffered." *Id.* at 789. The Court explained that "[t]he allegedly libelous story concerned the California activities of a California resident," and "[t]he article was drawn from California sources, and the brunt of the harm . . . was suffered in California." *Id.* at 788–89. The Court added that the defendants "knew that the brunt of [the] injury would be felt by [the plaintiff] in the [forum] state." *Id.* at 789–90.

In sum, under the *Calder* "effects" test, a court may exercise specific jurisdiction when "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the resulting harm to the plaintiff; and (3) the defendant expressly aimed his conduct at the forum, so that the forum can be said to be the focal point of the tortious activity." *Nat. Dynamics, LLC v. Conquest Int'l, Inc.*, No. 12-965, 2013 WL 12077798, at *4 (W.D. Tex. July 3, 2013) (citing *Calder*, 465 U.S. at 789); *cf. Walden*, 571 U.S. at 289 (concluding that Nevada court did not have jurisdiction over DEA agent who seized cash from two Nevada residents passing through Georgia and refused to return it to them for a prolonged period, knowing that his allegedly tortious conduct would delay the return of funds to plaintiffs in Nevada, because the agent had "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada").

6

Vericel asserts that it is not subject to this Court's personal jurisdiction because "Plaintiff's employment with Defendant when he lived in Texas is unrelated to the alleged acts that relate to his tort claims." ECF No. 4 at 9. The Court disagrees. To begin, Plaintiff was still employed by Defendant in Texas when Goodwin sent the cease-and-desist letter. *See* ECF No. 1-4 at 36 ("Your employment at Vericel is ending today, September 12, 2022."). "Courts have held that a company's long-standing employment relationship with an employee in another state who works from home may be sufficient to confer personal jurisdiction." *Klinge v. KBL Assocs., LLC*, No. SA-20-CV-470-XR, 2020 WL 3415877, at *3 (W.D. Tex. June 19, 2020) (collecting cases). Indeed, "an employer should reasonably anticipate being haled into court where it has knowingly chosen to employ employees for claims arising out of that employment." *Id.* at *6; *see also Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190 (5th Cir. 2019) (concluding that because the defendant company "made a deliberate choice to keep its employees aboard a ship bound for Texas," and "deliberately permitted its employees to enter Texas," "[it] may not now escape liability resulting from its considered commercial decision"); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 974 (5th Cir. 1984) ("Consistent with due process, an employer fairly may be sued for employment practices in the forum in which he has recruited his employees and caused them to undertake their work.").

Plaintiff was employed by Vericel in Texas, and when he was hired by Bioventus, he was still residing in Texas. He began his employment with Bioventus in Texas, and that is where he allegedly intended to begin working for Bioventus—thus, the effects of Defendant's interference with that employment were felt in Texas. Indeed, given that Vericel's counsel mailed the cease-and-desist letter to Plaintiff's address in Texas, Vericel presumably understood and intended that any impact on Plaintiff—including his compliance with the letter's directions to locate and return

7

the files he had allegedly taken—would likewise occur in Texas. While Plaintiff's claim for interference with an existing contract arises out of Goodwin's contact with Bioventus's offices in North Carolina, Plaintiff alleges that, in doing so, Vericel intended to interfere with the performance of his duties for Bioventus, which—as of the date of the letter—were occurring *in Texas*.

In short, Vericel allegedly committed an intentional tort,[2] resulting in harm to Plaintiff in Texas, such that Texas can be said to be the focal point of the harm, and Vericel expressly aimed its conduct at Plaintiff's activities and employment in Texas. *Nat. Dynamics*, 2013 WL 12077798, at *4. The Court concludes that Vericel's conduct was sufficient to establish personal jurisdiction under the *Calder* effects test. At a minimum, Vericel's impact on Plaintiff's livelihood in Texas was not based on the "random, fortuitous, or attenuated" contacts and, based on its conduct, Vericel "should reasonably [have] anticipate[d] being haled into court" in this State. *Burger King,* 471 U.S. at 475. Accordingly, Vericel's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) is **DENIED**.

**II.     Motion to Dismiss for Improper Venue or, Alternatively, to Transfer Venue**

    **A.     Legal Standard**

A party may move to dismiss an action based on improper venue pursuant to Rule 12(b)(3). *See* FED. R. CIV. P. 12(b)(3). Once a defendant challenges venue, the plaintiff has the burden of demonstrating that the chosen venue is proper. *Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 396 (S.D. Tex. 2011) (citation omitted). "On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of

---

[2] To establish a claim for tortious interference with an existing contract, a plaintiff must demonstrate, among other things, "a willful and intentional act of interference with the contract." *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam) (citations omitted). Thus, a plaintiff may show that venue is proper by "setting forth facts that taken as true would establish venue." *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000) (citing *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)).

Venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391. Section 1391(c) provides that a corporate defendant is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question" *Id.*

If venue is improper, 28 U.S.C. § 1406(a) instructs district courts to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The threshold issue is whether the civil action "might have been brought" in the district to which transfer is sought. 28 U.S.C. § 1404(a); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008). Once it is established that a civil action could have been brought in the destination venue, § 1404(a) gives the district court discretion to decide whether transfer is appropriate by balancing case-specific factors concerning the parties' private interests in convenience and the public interest of fair administration of justice. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Robinson v. Hillcrest Baptist Med. Ctr.*, No. A-09-CA-640-SS, 2009 WL 4639901, at *2 (W.D. Tex. Nov. 30, 2009).

"The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). "The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* The private and public interest factors are neither exhaustive nor exclusive, and no one factor holds dispositive weight. *Volkswagen*, 545 F.3d at 315.

The burden to show good cause for transfer rests on the moving party. *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). To succeed on a motion to transfer venue, the moving party must show that, based on the public and private interest factors, the transferee venue is "clearly more convenient than the venue chosen by the plaintiff." *Volkswagen*, 545 F.3d at 315.

This "calculus" of § 1404(a) changes, however, where transfer is sought based on a forum selection clause. When a contract includes a valid forum selection clause, the district court ordinarily should transfer the case to the forum stated in the clause. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied *Id.* The court must deem the private interests to weigh in favor of the preselected forum, the parties having struck that balance by their contract. *In re Rolls Royce Corp.*, 775 F.3d 671, 678 (5th Cir. 2014). Before giving this "controlling" weight to a forum selection clause, however, the clause must first be a valid and

controlling one. *Atl. Marine*, 134 S. Ct. at 581 n.5. Forum selection clauses are presumed to be valid and must be enforced by the court unless shown to be unreasonable. *See Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997).

### B.      Analysis

Because Vericel is subject to the Court's personal jurisdiction, it is deemed to reside in the Western District of Texas pursuant to 28 U.S.C. § 1391(c). Venue in this District is therefore proper, and Defendant's motion to dismiss this case for improper venue under Rule 12(b)(3) must be **DENIED**.

To determine whether a transfer to the United States District Court for the District of Massachusetts is required, the Court begins with the language of forum-selection clause in the Agreement. Plaintiff does not suggest that the forum selection clause in his Agreement with Vericel is invalid or unreasonable. Rather, he argues that the provision is not controlling here because this case falls outside of the scope of the forum selection clause. ECF No. 7 at 6–7. The Court agrees.

By signing the Agreement, Plaintiff consented to personal jurisdiction in Massachusetts "*for purposes of enforcing* [the] Agreement." ECF No. 1-4 at 12 (emphasis added). Courts have interpreted even broader forum selection clauses—covering disputes "arising out of" a contract, for example—to be inapplicable to disputes in which the contract is raised only as a defense. *See Rovi Guides, Inc. v. Comcast Corp.*, No. 216CV00322JRGRSP, 2016 WL 6217201, at *3 (E.D. Tex. Oct. 25, 2016) (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 391 (2d Cir. 2007) ("Because the recording contract is only relevant as a defense in this suit, we cannot say that [the plaintiff's] copyright claims originate from, and therefore 'arise out of,' the contract.") and *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679, 682 (2d Cir. 1993) ("[W]here a


plaintiff sues for copyright infringement and asserts no rights under a contract with the defendant containing a forum-selection clause, the forum-selection clause has no effect.")). It is true that Vericel's conduct in this case was predicated on the Agreement and its liability may depend in part on whether its interpretation of the Agreement was reasonable. Even so, Plaintiff clearly did not file this action for the purpose of *enforcing* the Agreement. Thus, the forum selection clause does not apply to the dispute at hand.

Nonetheless, because venue would also be proper in Massachusetts, where Vericel is subject to general jurisdiction, the Court must proceed to analyzing the private- and public-interest factors that bear on whether Massachusetts is clearly a more convenient forum than Texas.

The Court first considers the private-interest factors. To begin, while Vericel's conduct was directed toward Texas such that it is subject to this Court's jurisdiction, the sources of proof as to Vericel's justification for sending the cease-and-desist letter and Bioventus's reason(s) for terminating Plaintiff are located in Massachusetts and North Carolina, respectively. Massachusetts is home to Vericel and its relevant employees. Vericel does not have offices, relevant employees, or evidence located in this District, and this District is not home to any relevant witnesses, parties, or evidence other than Plaintiff. The District of Massachusetts will be able to secure the attendance of Massachusetts-based witnesses through compulsory process. Likewise, it would be more convenient and less costly for witnesses for both Vericel and Bioventus—generally located in Massachusetts and North Carolina—to attend depositions and trial on the East Coast than in this District. Furthermore, Plaintiff pled that he had informed Vericel that he was "moving to a new state." ECF No. 1-4 at 5. Given his intention to leave Texas, it is not clear to the Court that this forum will remain more convenient to him than Massachusetts. In sum, the private concerns generally weigh in favor of transfer to the District of Massachusetts.

As for the public-interest factors, the Court first observes that, while the potential forums have a nearly equal number of judges, the Western District of Texas has a significantly larger caseload than the District of Massachusetts. According to the Administrative Office of the U.S. Courts data, as of December 31, 2022, the Western District of Texas had 4,022 pending civil cases, and 6,526 pending criminal cases.[3] The District of Massachusetts has 3,199 pending civil cases, and 608 pending criminal cases. *Id*. The court congestion in this District weighs in favor of transfer.

The familiarity of the forum with the law that will govern the case and any concerns about potential conflict of laws or the application of foreign law are both neutral factors because, no matter where this action is litigated, the presiding court will be required to analyze and apply the law of a foreign state. While Plaintiff's claim for tortious interference with an existing contract will require the application of Texas law, any evaluation of Vericel's defenses based on its reading of the Agreement will require the court to interpret Massachusetts law. *See* ECF No. 1-4 at 12 ("This Agreement . . . will in all respects be interpreted, enforced and governed under the laws of the Commonwealth of Massachusetts."). Similarly, because the laws, employment practices, and citizens of both states are implicated in this case, Texas and Massachusetts have an equally strong interest in resolving this case.

Based on its analysis of the relevant private and public concerns, the Court concludes that that it is clearly more convenient for the parties to litigate this case in the Commonwealth of Massachusetts than in the Western District of Texas. *Volkswagen*, 545 F.3d at 315. Accordingly, this case will be transferred to the United State District Court for the District of Massachusetts and this Court does not reach the merits of Vericel's motion to dismiss this action pursuant to Rule 12(b)(6).

---

[3] *See* data taken from spreadsheets accessible at https://www.uscourts.gov/federal-judicial-caseload-statistics-2022-tables (last visited Apr. 13, 2023).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss this action or, in the alternative, to transfer the case to the District of Massachusetts (ECF No. 4) is **GRANTED IN PART** and **DENIED IN PART**, as stated herein.

The case is **TRANSFERRED** to the to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1404.

It is so **ORDERED**.

**SIGNED** this 14th day of April, 2023.

                                                    XAVIER RODRIGUEZ
                                                  UNITED STATES DISTRICT JUDGE